UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL LEE, Plaintiff, v. BRONXCARE HEALTH SYSTEM and GAFAAR SALAMI, Defendants. | 23 Civ. 4069 (DEH) **OPINION AND ORDER** |

DALE E. HO, United States District Judge:

Plaintiff Daniel Lee ("Mr. Lee") was employed as a Patient Care Technician ("PCT") at BronxCare Health System ("BronxCare"), a teaching hospital serving South and Central Bronx.[1] After an incident involving a minor patient in 2021, BronxCare terminated Mr. Lee's employment on November 12, 2021.[2] Mr. Lee claims that that his manager, Gafaar Salami ("Salami," and together with BronxCare, "Defendants") fired Mr. Lee on the basis of Mr. Lee's national origin (i.e., because he is not of Nigerian or African descent) and/or in retaliation over Mr. Lee's claims of national origin discrimination in BronxCare's hiring practices, in violation of Title VII of the Civil Rights Act ("Title VII"),[3] the New York Labor Law ("NYLL"),[4] New York State Human Rights Law ("NYSHRL"),[5] and New York City Human Rights Law ("NYCHRL").[6]

[1] Def.'s 56.1 Statement of Uncontested Facts ("Def.'s 56.1 Stmnt.") ¶ ¶ 3, 6, ECF No. 55.

[2] *Id.* ¶¶ 95, 157.

[3] 42 U.S.C.A. § 2000e *et seq*.

[4] N.Y. Labor Law § 215.

[5] N.Y. Exec. Law § 290 *et seq.*

[6] N.Y.C. Admin. Code § 8-101 *et seq.*; Letter, ECF No. 83.

Defendants move for summary judgment, arguing that the undisputed facts demonstrate that Mr. Lee was suspended and then fired in accordance with BronxCare's practices and policies regarding employees who are investigated for and have substantiated claims of physical abuse and neglect. Mr. Lee contends that Defendants' stated reasons are pretextual.

The Court concludes that Defendants are entitled to summary judgment. As explained below, even assuming that Mr. Lee has made the prima facie cases necessary for his claims of national origin discrimination or retaliation under Title VII, NYLL, NYSHRL, and NYCHRL, there is no genuine dispute of fact that Defendants' reasons for firing Mr. Lee were legitimate, rather than pretextual. Therefore, Defendants' Motion for Summary Judgment is **GRANTED**.

## BACKGROUND[7]

Mr. Lee was hired to work at BronxCare as a Patient Care Technician ("PCT") in September 2006.[8] At the time of his termination, Mr. Lee was working in BronxCare's Department of Psychiatry's Child and Adolescent Unit,[9] which provides medical and mental health treatment to patients between five and seventeen years old.[10] In his role, Mr. Lee's primary responsibilities included, but were not limited to, conducting patient rounds, engaging with patients during scheduled group time, and monitoring the overall safety and wellbeing of patients and staff in the

[7] The facts herein are taken directly from the Parties' Rule 56.1 statements and are undisputed unless stated otherwise. In instances where a party purports to dispute a fact and provide no additional substantiation, the Court treats such facts as undisputed. *See, e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("To defeat summary judgment, [a nonmoving party] may not rely on conclusory allegations or unsubstantiated speculation" and "must offer some hard evidence showing that its version of the events is not wholly fanciful.").

[8] Def.'s 56.1 Stmnt. ¶ 6.

[9] *Id.* ¶ 25.

[10] *Id.* ¶ 26.

unit, including performing constant observations of patients as needed.[11] In addition to his PCT role, Mr. Lee was also a Union Delegate for 1199 SEIU ("1199"), a labor union that is the certified bargaining representative for certain BCHS employees, including PCTs.[12] As Union Delegate, Mr. Lee acted as a representative for bargaining unit members when engaging with hospital leadership and at disciplinary hearings.[13]

Because child psychiatric patients have a risk of becoming agitated or violent during their stay, BronxCare provides its employees with mandatory "Prevention and Management Crisis Situations" ("PMCS") training, which teaches employees on the use of defensive tactics and de-escalation techniques.[14] Mr. Lee received PMCS training when he was hired and continued receiving training periodically until the time of his termination.[15] BronxCare policy requires staff members to alert a given patient's primary nurse when the patient becomes agitated or displays sign of physical aggression,[16] and employees are not permitted to strike patients under any circumstances.[17]

In cases of suspected child abuse, maltreatment, or negligence against patients, BronxCare PCTs, registered staff nurses, mental health service providers, and physicians are "mandatory reporters" who are legally required to contact the Justice Center for the Protection of People with Special Needs ("Justice Center"), an agency charged with protecting the rights of vulnerable

---

[11] *Id.* ¶ 27.

[12] *Id.* ¶¶ 7-11.

[13] *Id.* ¶ 10.

[14] *Id.* ¶ 12.

[15] *Id.* ¶¶ 12-15.

[16] *Id.* ¶ 116.

[17] *Id.* ¶ 117.

patients from abuse or neglect.[18] The Justice Center has the authority to conduct independent investigations of allegations of abuse and neglect and can issue administrative sanctions against individuals if it makes a finding of misconduct, including permanently barring individuals from working with vulnerable New Yorkers.[19] If either BronxCare or the Justice Center initiates an investigation against a BronxCare employee, it is BronxCare's practice to suspend that individual's employment until the investigation is completed.[20] If the Justice Center substantiates claims of physical abuse and excessive force by a BronxCare employee, it is BronxCare's policy to terminate the employment of that individual.[21]

The events of August 22, 2021 were recorded on video cameras maintained by BronxCare.[22] On that date, Mr. Lee was assigned a "visual constant observation" of a patient in the Child and Adolescent Unit.[23] Employees assigned to visual constant observation are required to be within fifteen feet of their assigned patient at all times and to keep the patient in sight at all times, and are further required to update patient logs every fifteen minutes documenting their assignment.[24] On the morning of August 22, 2021, Mr. Lee escorted his assigned patient to the dining area for breakfast.[25] Another patient, "J.T.," attempted to jump on Mr. Lee's patient.[26] In

---

[18] *Id.* ¶¶ 16, 18-20.

[19] *Id.* ¶¶ 135-36.

[20] *Id.* ¶ 132.

[21] *Id.* ¶ 155.

[22] *Id.* ¶ 95.

[23] *Id.* ¶¶ 83, 89.

[24] *Id.* ¶¶ 86-88.

[25] *Id.* ¶ 91.

[26] *Id.* ¶ 92.

response, Mr. Lee removed his assigned patient and returned approximately an hour later.[27] Upon returning, Mr. Lee continued caring for his assigned patient.[28] Mr. Lee's patient requested to drink milk,[29] which Mr. Lee went to a pantry to retrieve. At this point, the Defendants allege that Mr. Lee failed to maintain visual constant observation when visiting the pantry,[30] while Mr. Lee alleges that his patient was always with him.[31] Mr. Lee also represents that he maintained visual constant observation throughout his shift on his assigned Patient's Constant Observation Checklist.[32]

Shortly after Mr. Lee retrieved the milk, J.T. took Mr. Lee's cell phone and ran to the other side of the room.[33] Mr. Lee was able to recover his phone from J.T. and proceeded to play cards with Mr. Lee's assigned patient and J.T.[34] While playing cards, J.T. asked Mr. Lee to buy him chicken, which Mr. Lee refused to do.[35] J.T. then approached Mr. Lee and struck him on the head.[36] Mr. Lee first called out for assistance from security and then pushed J.T. against a wall, pinning J.T. there until security came to the dining area.[37] Another employee witnessed Mr. Lee restraining J.T. and attempted to de-escalate the interaction.[38] J.T. told the other employee that Mr. Lee had

---

[27] *Id.* ¶¶ 93, 94.

[28] *Id.* ¶ 99.

[29] *Id.* ¶ 100.

[30] *Id.* ¶ 102.

[31] "Def's [sic] statement of undisputed facts Pursuant to Local Civil Rules 56.1" ("Pl.'s 56.1 Stmnt.") ¶ 102, ECF No. 68.

[32] Def.'s 56.1 Stmnt. ¶ 119; Pl.'s 56.1 Stmnt. ¶ 119.

[33] Def.'s 56.1 Stmnt. ¶ 104.

[34] *Id.* ¶¶ 106-108.

[35] *Id.* ¶ 109.

[36] *Id.* ¶ 110.

[37] *Id.* ¶ 114.

[38] *Id.* ¶ 120.

placed his hands around J.T.'s neck, and the employee reported J.T.'s allegations to the Justice Center.[39] After Mr. Lee's interaction with J.T., BronxCare suspended Mr. Lee from employment on the same day pending further investigation,[40] consistent with its practice of suspending employees facing misconduct charges until an investigation is completed.[41]

The Justice Center commenced an investigation, which was reported to BronxCare on September 1, 2021.[42] The Justice Center reported its findings to BronxCare on November 3, 2021.[43] Though the Justice Center did not conclude that Mr. Lee placed J.T. in a chokehold, it did conclude that Mr. Lee placed J.T. against the wall "in a physically aggressive manner" and failed to properly deescalate J.T.'s behavior.[44] After receiving the Justice Center's report, BronxCare terminated Mr. Lee's employment, consistent with its policy to terminate any employee for whom the Justice Center substantiates claims of physical abuse and excessive force.[45] In its termination notice, BronxCare made further findings that were generally coextensive with the Justice Center's report, including that Mr. Lee (i) exhibited gross negligence with respect to patient welfare;[46] (ii) did not maintain continuous view of his assigned patient despite representing doing so on Mr. Lee's patient's Constant Observation checklist;[47] and (iii) failed to report J.T.'s behavior to J.T.'s primary

---

[39] *Id.* ¶¶ 120, 124.

[40] *Id.* ¶ 121.

[41] *Id.* ¶ 132.

[42] *Id.* ¶ 133.

[43] *Id.* ¶ 149.

[44] *Id.* ¶¶ 150-52.

[45] *Id.* ¶¶ 155-57.

[46] *Id.* ¶ 158.

[47] *Id.* ¶ 159.

nurse when J.T. began engaging in unacceptable behavior,[48] all in contravention of BronxCare's policies. Salami was tasked with communicating the termination notice to Mr. Lee but was not involved in determining whether his conduct merited termination in the first instance.[49]

Mr. Lee claims that Defendants suspended and subsequently fired him for reasons unrelated to the incident on August 22, 2021. Mr. Lee claims that Defendants took adverse action against him because of his national origin and in retaliation for his protected activities as an union representative.[50] Specifically, in March 2021, Mr. Lee circulated a petition alleging that Salami engaged in discriminatory practices "related to hiring of a specific race/gender from a Nursing Agency," claiming that Salami had been "hiring only one race/gender for numerous years,"[51] specifically, only people of African origin generally, or of Nigerian descent specifically.[52]

As a result of this petition, BronxCare's Labor Relations Specialist, Gloria Rosario, conducted an internal investigation on the Department of Psychiatry's hiring practices.[53] The investigation concluded that hiring decisions were made based on candidates' skills, experience, and qualifications and without consideration of legally protected factors such as race or national origin.[54] Mr. Lee claims that subsequent to his petition, Defendants retaliated against him by suspending him on August 22, 2021 and terminating him on November 12, 2021.[55]

---

[48] *Id.* ¶ 160.

[49] *Id.* ¶ 166.

[50] Pl.'s Mem. of Law in Opp'n to Def's. Mot. for Summ. J. 7-8, ECF No. 67 ("Pl.'s Opp'n Mem.").

[51] Def.'s 56.1 Stmnt. ¶ ¶ 55-57.

[52] Pl.'s Am. Compl. ¶ 33, ECF No. 7.

[53] Def.'s 56.1 Stmnt. ¶ ¶ 51, 54, 60.

[54] *Id.* ¶ 69.

[55] Pl.'s Opp'n Mem. 7-8.

## LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[56,57] A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[58] The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[59] "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."[60]

In ruling on a motion for summary judgment, the court must view all evidence "in the light most favorable to the non-moving party,"[61] and must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."[62] But the non-moving party must advance more than a "scintilla of evidence,"[63] and demonstrate more than "some metaphysical doubt as to the material facts."[64] The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements."[65]

---

[56] Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012).

[57] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

[58] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[59] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[60] *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23).

[61] *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004).

[62] *Johnson*, 680 F.3d at 236.

[63] *Anderson*, 477 U.S. at 252.

[64] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[65] *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).

"Affidavits submitted in support of or in opposition to the summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'"[66]

"[I]n the rare circumstance where the plaintiff relies almost exclusively on her own testimony, much of which is contradictory and incomplete, to establish a triable issue of fact, it may well be impossible for the court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account."[67] At the same time, however, as the Second Circuit recently reiterated, a plaintiff's testimony, standing alone, may be independently sufficient to raise a genuine issue of material facts.[68] While credibility assessments are typically the province of the jury, "a party's affidavit may not create an issue of fact by 'contradict[ing] the affiant's previous deposition testimony.'"[69] Nor can a party rely on their "testimony to raise a genuine issue of fact" if "that testimony is inescapably and unequivocally contradicted by [his] own sworn and written statements" and where he "offers no plausible explanation for the multitude of contradictions."[70] However, the threshold for a Court to disregard a plaintiff's testimony is quite high: the Court must

---

[66] *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

[67] *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 86 (2d Cir. 2019) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)).

[68] *See Knox v. CRC Mgmt. Co., LLC*, 134 F.4th 39, 49 (2d Cir. 2025).

[69] *Maxwell v. City of New York*, 380 F.3d 106, 109 (2d Cir. 2004) (emphasis in original) (quoting *Hayes v. New York City Dep't of Corrections,* 84 F.3d 614, 619 (2d Cir. 1996), *supplemented*, 108 F. App'x 10 (2d Cir. 2004)).

[70] *Bentley*, 935 F.3d at 88; *see also Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 470 (S.D.N.Y. 1998).

find the record contradictions "inescapable and unequivocal" to find that her testimony raised only "a sham issue of fact."[71]

## DISCUSSION

Defendants move for summary judgment on Mr. Lee's national origin discrimination and retaliation claims under Title VII, the NYLL, NYSHRL, and NYCHRL. Assuming (without deciding) that Mr. Lee has established prima facie cases of discrimination and retaliation, the Court concludes that there is no genuine dispute of fact that Defendants provided legitimate non-discriminatory justifications for Mr. Lee's suspension and firing, which Mr. Lee fails to demonstrate are pretextual. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED**.

### I. Legal Standards

Employment discrimination claims brought under Title VII, the NYSHRL, and the NYCHRL are subject to the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, "[a] plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext."[72]

Retaliation claims brought under Title VII, NYLL, NYSHRL, and NYCHRL are also subject to the *McDonnell Douglas* burden-shifting framework. Once a plaintiff has established a

---

[71] *Fosamax Prods. Liability Litig.*, 707 F.3d 189, 194 (2d Cir. 2013).

[72] *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006); *see also McSweeney v. Cohen*, 776 F. Supp. 3d 200, 277 (S.D.N.Y. 2025) ("[I]dentical claims may be brought under the NYLL and NYSHRL.").

prima facie showing of retaliation,[73] "the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action."[74] If the employer articulates a non-retaliatory reason for the adverse employment action, the plaintiff must then show that the defendant's proffered non-retaliatory reason is mere pretext.[75] A plaintiff must also show that "there was a causal connection between [her] protected activity and the employer's subsequent action."[76] "A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action," from which "a reasonable juror could conclude that the explanations were a pretext for a prohibited reason."[77]

## II. Defendants' Proffered Justification for Adverse Employment Action

This Court assumes, without deciding, that Mr. Lee has established prima facie cases of national origin discrimination and retaliation by Defendants regarding his non-African nationality and in response to his petition about alleged discriminatory hiring practices. However, at summary judgment, prima facie cases of discrimination and retaliation are not sufficient on their own if Defendants are able to provide legitimate, non-pretextual explanations for the adverse employment

---

[73] For retaliation claims brought under Title VII, a plaintiff can "establish a prima facie case of retaliation by showing 1) participation in a protected activity; 2) the defendant's knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action." *Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (internal quotation marks omitted) (citing *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).

[74] *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011); *see also McSweeney v. Cohen*, 776 F. Supp. 3d 200, 277 (S.D.N.Y. 2025) ("[I]dentical claims may be brought under the NYLL and NYSHRL").

[75] *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011).

[76] *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 449 (S.D.N.Y. 2018).

[77] *Zann Kwan*, 737 F.3d at 846.

actions taken against a Plaintiff. Here, the Court concludes that Defendants have provided such legitimate explanations for Mr. Lee's suspension and termination.

First, it is undisputed that BronxCare has a practice of placing employees on unpaid suspension during an investigation into allegations of employee misconduct.[78] BronxCare was aware that Mr. Lee was under investigation by the Justice Center,[79] so it was consistent with BronxCare's policies for BronxCare to suspend Mr. Lee during the Justice Center's investigation. Second, it is undisputed that BronxCare has a policy of terminating the employment of any employee with respect to whom the Justice Center substantiates claims of physical abuse and excessive force.[80] Once the Justice Center substantiated multiple claims of physical force by Mr. Lee against J.T., it was consistent with BronxCare's policies to terminate Mr. Lee's employment.[81] These justifications are plainly legitimate, and Mr. Lee does not purport to argue otherwise.

## III. Lack of Pretext

Because Defendants had a legitimate justification for Mr. Lee's suspension and termination, the burden shifts to the plaintiff to show these reasons were mere pretext for discriminatory or retaliatory animus. Mr. Lee provides three arguments to suggest that BronxCare's justifications were pretextual, none of which are successful.

---

[78] Def.'s 56.1 Stmnt. ¶ 132.

[79] *Id.* ¶ 133.

[80] *Id.* ¶ 155.

[81] *Id.* ¶¶ 150-51, 157.

### A. Comparators

First, Mr. Lee argues that similarly-situated employees were not disciplined for infractions,[82] which can give rise to an inference of pretext.[83] Mr. Lee alleges that certain employees were not disciplined for failing to maintain "constant one on one" observation of their patients.[84] Mr. Lee further alleges that he witnessed "numerous instances of misconduct" by employees of Nigerian descent, "yet the punishment of employees of Nigerian descent was less severe than similarly situated employees of non-Nigerian descent for identical conduct,"[85] including that during Salami's tenure, "no PCT of Nigerian descent was fired for violence against a patient."[86]

The record before the Court as to these purported comparators cannot support an inference of pretext. As an initial matter, although Mr. Lee purports to identify various instances where other employees were allegedly not disciplined for various instances of misconduct, he does not dispute that he was not involved in any disciplinary matters relating to BronxCare employees[87] and therefore lacks personal knowledge of these events. A court cannot rely on inadmissible hearsay

---

[82] Pl.'s Opp'n Mem. at 5 ("Lot of the patients complained about the way they were treated by Mr. salami national origin of people. Mr salami would never discipline his national origin of people…").

[83] *See, e.g.*, *Iuorno v. DuPont Pharms. Co.*, 129 F. App'x 637, 640 (2d Cir. 2005) (citing *Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000).

[84] Pl.'s Opp'n Mem. at 5 (alleging another employee "left a 13 year old girl by herself that was on a constant one on one.").

[85] Pl.'s Am. Compl. ¶ 26.

[86] *Id.*

[87] Def.'s 56.1 Stmnt. ¶ 30; Pl.'s 56.1 Stmnt. ¶ 30.

to deny summary judgment where, as here, there is no indication that there will be admissible evidence presented at trial.[88]

But even crediting Mr. Lee's assertions, he has failed to establish a dispute of fact as to whether similarly-situated employees were treated differently than he was. When a plaintiff relies on a comparator to allow for an inference of discriminatory or retaliatory motive, that comparator must be "similarly situated in all material respects" to the plaintiff other than national origin or the conduct giving rise to retaliation.[89] Here, although Mr. Lee alleges that other employees neglected their patients and faced no repercussions,[90] he offers no evidence that these other employees were investigated by the Justice Center (or otherwise)—which was the basis of his suspension—or that claims of abuse or neglect were sustained against them—which was the basis of his termination.[91] The Court therefore cannot conclude that the other employees were similarly-situated to Mr. Lee such that they may serve as comparators for purposes of establishing pretext. The Court finds particularly relevant, and Mr. Lee does not dispute, that there is no evidence that any BronxCare employee investigated for physical abuse of a patient was not suspended; nor is there any evidence that any BronxCare employee with a substantiated allegation of such abuse was not terminated—let alone an employee of African descent. Accordingly, Mr. Lee has not provided any evidence that would allow for an inference of pretext based on disparate treatment.

---

[88] *See Abdel-Karim v. EgyptAir Airlines*, 116 F. Supp. 3d 389, 409 (S.D.N.Y. 2015), *aff'd sub nom*, *Abdel-Karim v. Egyptair Holding Co.,* 649 F. App'x 5 (2d Cir. 2016).

[89] *Iuorno*, 129 F. App'x at 640.

[90] Pl.'s Opp'n Mem. at 5.

[91] *See, e.g.*, *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d. Cir. 1997) (noting employees that did not violate the same policy the plaintiff violated were not similarly situated to the plaintiff).

**B. Evidence Supporting Termination**

For further evidence of pretext, Mr. Lee also argues that Defendants relied on insufficient evidence and inconsistent explanations when taking adverse employment actions against him.[92] This argument also fails. Mr. Lee asserts that the Justice Center "dropped all charges except one"—namely that Mr. Lee did not "de-escalate the situation."[93] Even if Mr. Lee were correct that the Justice Center had substantiated only one claim against him, there is no dispute that a Justice Center investigation was a legitimate basis for suspending Mr. Lee and consistent with BronxCare policy. Nor is there any dispute that, after its investigation, the Justice Center substantiated at least one claim, which under BronxCare policy was a valid basis for terminating Mr. Lee.[94] The record thus unequivocally supports Defendants' consistent explanations for Mr. Lee's suspension and termination, namely that BronxCare suspends employees who are investigated by the Justice Center, and terminates employment for individuals who the Justice Center substantiates claims against.[95] Mr. Lee has therefore provided no basis to dispute that BronxCare's reliance on a Justice Center report that substantiates allegations of physical abuse or neglect was legitimate and non-pretextual.

At any rate, the Court notes that Mr. Lee's assertion that the Justice Center substantiated only one claim is not supported by any evidence in the record other than his own self-serving statement. Mr. Lee provided no evidence to suggest that the Justice Center report in the record is inaccurate, and this report unambiguously indicates that the Justice Center substantiated three

---

[92] Pl.'s Opp'n Mem at 2. ("The defendants have no factual evidence of the alleged acts they accused me of.").

[93] Pl.'s 56.1 Stmnt.¶ 147.

[94] *Id.*

[95] *See, e.g.,* ECF Nos. 53-10, 53-26.

claims against Mr. Lee, not just one.[96] These substantiated claims included "Deliberate Inappropriate Restraint," "Physical Abuse," and "Neglect," all based on ample evidence, including video records, testimony, medical reports and subject records.[97] Ultimately, Mr. Lee's "self-serving and conclusory testimony . . . that is unsupported by the evidence is insufficient to raise an issue of fact to defeat summary judgment" on this issue.[98] And to the extent that Mr. Lee is disputing the validity of all of the underlying Justice Center charges substantiated against him, it is not for the Court to question the indisputably valid decision by BronxCare to rely on those findings, as "the court's role is to prevent unlawful [employment] practices, not to act as a superpersonnel department that second guesses employers' business judgments."[99] Put another way, even if the Justice Center report were flawed or inaccurate in some way, BronxCare was entitled to rely on it (absent some sort of indicia that would render such reliance unreasonable) in making the decision to terminate him, consistent with company policy. Thus, Mr. Lee's attempt to show an inadequate basis for his termination as a basis for an inference of pretext fails.

### C. Salami's Animus and Retaliation

Finally, Mr. Lee argues that his suspension and eventual termination were a result of discrimination and retaliation orchestrated by Salami, who Mr. Lee asserts had animus against people not of Nigerian descent, and who was the target of the earlier petition circulated by Mr. Lee.[100] However, it is undisputed that Salami did not have the authority to terminate employees

---

[96] Ex. 9 (the Justice Center's investigation determination), ECF No. 53-10.

[97] *Id.*; Def.'s 56.1 Stmnt. ¶ 148.

[98] *Khezrie v. Greenberg*, 53 F. App'x 592, 593 (2d Cir. 2002).

[99] *See Luxenberg v. Guardian Life Ins. Co.*, No. 02 Civ. 9116, 2004 WL 385116, at *22 (S.D.N.Y. Feb. 27, 2004).

[100] Pl.'s Opp'n Mem. at 7.

and was not involved in the decision to terminate Mr. Lee's employment.[101] Nor was Salami involved in the Justice Center investigation into Mr. Lee's interactions with J.T.[102] Indeed, the only action Salami took was to notify Mr. Lee of the reason for Mr. Lee's termination.[103] Thus, even if Mr. Lee's assertions that Salami harbored discriminatory animus or retaliatory motive against Mr. Lee are taken as true, Mr. Lee has failed to establish facts sufficient for a reasonable jury to find that BronxCare's stated justifications in suspending and ultimately terminating him were pretextual. Moreover, it is undisputed that BronxCare was not involved in the Justice Center investigation, which was undertaken independently from any BronxCare investigations.[104] Mr. Lee thus fails to present any admissible evidence that BronxCare did anything but comply with its internal practices and policies regarding Justice Center investigations when deciding to suspend and terminate Mr. Lee's employment. Any arguments regarding Salami's views or actions are, therefore, irrelevant.[105]

---

[101] Def.'s 56.1 Stmnt. ¶ 166.

[102] *Id.* ¶ 153.

[103] *Id.* ¶ 167.

[104] *Id.* ¶¶ 135-38.

[105] Additionally, Mr. Lee has not provided any admissible evidence to support the claim that Defendants' actual reason for taking adverse employment action against him was retaliatory. The only source of evidence for pretext provided by Mr. Lee is his own uncorroborated assertions in his filings that he had been retaliated against by Salami and BronxCare because of his petition. Pl.'s Opp'n Mem. at 6-7. These "unsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000); *see also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("[T]he plaintiff cannot meet this burden through reliance on unsupported assertions."). Mr. Lee admits that he lacks evidence of retaliation in his deposition, *see, e.g.*, Lee Dep. 255:17-25, and did not provide any additional evidence beyond conclusory allegations that Defendants retaliated against Mr. Lee. A party's "self-serving and conclusory testimony . . . that is unsupported by the evidence is insufficient to raise an issue of fact to defeat summary judgment." *Khezrie*, 53 F. Appx at 593. Thus, Mr. Lee has not provided sufficient evidence to defeat a summary judgment motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) ("It is the conclusory nature of respondent's allegations . . . that disentitles them to the presumption of truth.").

* * *

Based on the above, the Court concludes that Defendants are entitled to summary judgment on Mr. Lee's national origin discrimination and retaliation claims.

## CONCLUSION

For the reasons discussed herein, Defendants' Motion for Summary Judgment is **GRANTED**.

The Clerk of Court is respectfully directed to terminate ECF No. 53 and to close this case.

SO ORDERED.

Dated: July 30, 2026
New York, New York

DALE E. HO
United States District Judge